# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA



FILED
APR 16 2021
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

__Brianna Ann Sunshine__          OID# 3351255

__a.k.a. William Allen LaRue__    OID# 3351255

_(Enter above the full name of the plaintiff or plaintiffs in this action)._    _(Inmate Reg. # of each Plaintiff)_

**VERSUS**         CIVIL ACTION NO. 2:21-CV-00241
                  _(Number to be assigned by Court)_

Betsy C. Jividen, Commissioner
WV Division of Corrections And
Rehabilitation, et al.

_(Enter above the full name of the defendant or defendants in this action)_

## COMPLAINT

I.    **Previous Lawsuits**

    A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

        Yes _____    No __NO__

1

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

1. Parties to this previous lawsuit:

   Plaintiffs: _____

   _____

   _____

   Defendants: _____

   _____

   _____

2. Court (if federal court, name the district: if state court, name the county):

   _____

3. Docket Number: _____

4. Name of judge to whom case was assigned:

   _____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?

   _____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

a

II. Place of Present Confinement: Mount Olive Correctional Complex & Jail

    A. Is there a prisoner grievance procedure in this institution?

        Yes ✓      No ____

    B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

        Yes ✓      No ____

    C. If your answer is YES:

        1. What steps did you take? ON 2-2-2021 Sent Grievance to unit team, appealed that to Superintendant ON 2-5-2021 then to Commissioner on 2-11-2021

        2. What was the result? Grievance denied

    D. If your answer is NO, explain why not: ____

III. Parties

(In item A below, place your name and inmate registration number in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

    A. Name of Plaintiff: Brianna Ann Sunshine a.k.a. William Allen LaRue OID#335125 - MOCCJ
        Address: 1 Mountainside Way, Mount Olive, WV 25185-1000

    B. Additional Plaintiff(s) and Address(es): ____

(In item C below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item D for the names, positions, and places of employment of any additional defendants.)

C.  Defendant: **Betsy C. Jividen**

is employed as: **Commissioner of Corrections And Rehab.**

at **1409 Greenbrier Street, Charleston, WV 25311**

D.  Additional defendants: _____

## IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. The plaintiff, has a severe gender dysphoria which is causing her to suffer with an ongoing substantial great deal of pain and severe emotional distress, anxiety, frustration, sadness, self-hatred, shame, depression, and acute hopelessness at being a female trapped in the wrong body with the wrong genitalia since she was a young child of three years of age.

2) The plaintiff is a female and has always been a female. That is who the plaintiff is. The plaintiff is not a male.

3) The plaintiff, is a transgender female, who has a serious medical need, known as (transexualism), which is a condition recognized by the (APA) American Psychiatric Association. Transexualism is a condition when a physiologically normal person (i.e., not a hermaphrodite - a person whose sex is not clearly defined due to a congential condition) experiences discomfort or discontent about nature's choice of his or her particular sex and prefers to be the other sex.

4) This discomfort is generally accompanied by a desire to utilize hormonal, surgical and civil procedures to allow the individual to live in their prefered sex role.

5) The diagnosis is appropriate only if the discomfort has been continuous for at least two years, and is not due to another mental disorder, such as Schizoprenia.

(6) A clinical threshold is passed when concerns, uncertainties, and questions about gender identity persist during a person's development, become so intense, as to seem to be the most important aspect of a person's life, or prevents the establishment of a relatively unconflicted gender identity, as in the instant case of the plaintiff. Such struggles are then variously informally referred to as a gender identity problem, gender dysphoria, or transexualism. Such struggles are known to occur from the preschool years to old age, and have many alternate forms.

(7) The Diagnostic and Statistical Manual (DSM-5) is a manual that lists various mental health conditions and is used to standerdize diagnosis and to provide a reference point respecting diagnosis, including GID. The DSM-5 defines GID as: (1) A strong and persistent cross identification (not merely a desire for any perceived cultural advantage of being the other sex) manifested by symptoms such as a stated desire to be the other sex, frequent passing as the other sex, desire to live and be treated as the other sex, or the conviction that they have the typical feelings and reactions of the other sex; (2) Persistent discomfort with his or her sex or sense of inappropriateness in the gender role of that sex, manifested by symptoms such as preoccupation with getting rid of primary and secondary sex characteristics (e.g. request for hormones, surgery, or other procedures to physically alter sexual characteristics to stimulate the other sex) or belief that he or she was born with the wrong sex; (3) The disturbance is not concurrent with a physical intersex condition; and (4) The disturbance causes clinically significant distress or impairment in social, occupational and other important areas of functioning.

(8) A gender identity disorder (GID) is also known as gender dysphoria, or transexualism, which is a SERIOUS MEDICAL NEED, which is a medical condition recognized by the American Psychiatric Association (APA),

(9) A serious medical need is one that involves a substantial risk of serious harm if left untreated. The substantial risks of serious self harm that are associated with the failure to <u>adequately treat</u> a gender identity disorder, includes the risk of acute depression, autocastration, self-penectomy or suicide.

(10) Persons who are suffering with a severe gender dysphoria, and <u>who are denied</u> all of the adequate medical treatments that are necessary to CURE their severe gender dysphoria <u>are known</u> to attempt to commit suicide and mutilate their genitalia at the frustration of living with an untreated gender, because they are really a female imprisoned in the wrong body with the wrong genitalia, and they would rather die than live as a male.

(11) The plaintiff, is facing that ongoing substantial risk of imminent serious self-harm, <u>without all of the adequate medical treatments</u> that she needs to CURE her severe gender dysphoria, and the defendant will not allow the plaintiff to have <u>all of</u> the adequate medical treatments that are medically necessary to CURE the severe gender dysphoria of the plaintiff, and this denial of adequate medical care places the plaintiff at an unreasonable substantial risk of imminent serious self-harm, without any legitimate penological purpose.

12) The defendant is clearly denying the plaintiff of her right to be adequately protected from the ongoing substantial risk of <u>imminent</u> serious self-harm, by not allowing the plaintiff to have access to receive all of the adequate medical treatments that are medically necessary to <u>CURE</u> Ms. Sunshine's severe gender dysphoria.

13) The mere fact that adequate medical care for Ms. Sunshine's serious medical need of transexualism may be expensive, it however does not excuse prison officials from the <u>Eighth Amendment</u> obligation to provide it to Ms. Sunshine.

14) Adequate medical care requires treatment by qualified medical personel, who provide services that are of a quality acceptable when measured by prudent professional standards in the community. Adequate medical care must be tailored to an inmate's particular medical needs and based on medical conditions.

15) It is medically necessary for a person who is diagnosed with transexualism to have a real-life experience of living in the desired gender. The real-life experience for a male-to-female transexual includes: 1) The use of modest makeup, 2) The wearing of female undergarments, 3) Taking female hormones, 4) Shaving body parts, 5) Using the toilet as a female, 6) Wearing skirts and dresses, 7) Being treated and respected as a female, and, 8) Being referred to as a female.

16) The defendant, would like for the court to believe that the plaintiff, Ms. Sunshine is not having a real-life experience living and appearing as a female incarcerated in a male institution, even though Ms. Sunshine:

1. Wears modest makeup
2. Wears female undergarments
3. Wears pigtails
4. Shaves body parts
5. Takes female hormones
6. Uses the toilet as a female
7. Being addressed as a female, by inmates
8. Being addressed by her first name of Brianna by inmates
9. Being spoken to and referred to as a female, by inmates
10. Being treated and respected as a female, by inmates
11. Wearing a t-shirt like a skirt or dress
12. Talking with a feminine voice,

Of which are all part of the real-life experience of living and appearing as a female.

17). According to WVDCR P.D. No. 411.00 issued by the defendant, that she will allow the plaintiff Ms. Sunshine to have a sex change/gender reassignment surgery if it is possible for the plaintiff, Ms. Sunshine to have a real-life experience living and appearing as a female, stated in paragraph 16 above.

9

18) The defendant is fully aware of the fact that the plaintiff's gender dysphoria is a serious life threatening medical condition, and that it will continue to deteriate over time, yet despite of this knowledge, the defendant will not allow plaintiff to have access to a specialist to have a sex reassignment surgery, that is medically necessary to protect her from the substantial risk of imminent serious self-harm that plaintiff is being subjected to.

19) In the instant case, prison officials are being deliberately indifferent to the plaintiff's serious medical need of (transexualism) by their refusal to allow plaintiff to have access to a specialist to have a sex reassignment surgery that is medically necessary to protect plaintiff from the substantial risk of imminent serious self-harm that she is being subjected to, and by their refusual to refer to the plaintiff as a female, address her by her female name of Ms. Brianna, speak to her as a female, treat her as a female, respect her as a female, and refer to plaintiff as: Miss, her, girl, little lady, young lady, Ms, and she, knowing this is medically necessary.

20) This deliberate indifference by prison officials to plaintiff's serious medical need of transexualism, places her at a substantial risk of imminent serious self-harm stated herein at paragraph ten on page seven of this complaint.

21) There are numerous cases where a transgender person has tried to commit suicide and have mutilated their genitalia, at the frustration of living with an untreated gender, see, Gammett v. Idaho State Board of Corrections, No. CV05-527--S-MHW, 2007 WL 2186896 (D. Idaho July 27, 2007). In that case, a transgender woman named Jennifer Ann Spenser had not been diagnosed with GID before she was incarcerated. She made many requests for treatment. After getting no help, she performed surgery on herself by cutting off her testicles. In Kosilek v. Maloney, F. Supp. 2d 156 (D. Mass. 2002), Michelle Kosilek sued prison officials for money damages and sex reassignment surgery after over a decade in which she was incarcerated without any form of gender-affirming medical care. While in prison she tried to kill herself and to castrate herself.

22) Under the Eighth Amendment, plaintiff is entitled to medical care for her serious medical need of transexualism and a risk of suicide. Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996); Gregoire v. Class, 236 F.3d 413 (8th Cir. 2000); Estelle v. Gamble, 429 U.S. 97, 103 (1976); and Farmer v. Brennan, 511 U.S. 825, 842 (1995).

23) Denial of medical care is surely not part of the punishment which civilized nations may impose for crime. Estelle v. Gamble, 429 U.S. 97, 103 (1976).

24) When prison guards and other non-medical officials intentionally deny, delay or interfere with a transgender inmate's access to medical treatment for their gender dysphoria, they are acting with deliberate indifference to a serious medical need.

25) Prison officials are subjecting the plaintiff to both cruel and unusual punishment and a substantial risk of imminent serious self-harm, by failing to administer proper medical treatments that are medically necessary to cure the plaintiff's severe gender dysphoria.

26) Plaintiff is under imminent danger of serious physical injury of self-harm, due to the desire to perform a self-penectomy, a self-castration and or attempt suicide continues to grow and become more intense over time at the frustration of living in a male body, with the wrong genitalia, which is causing her to suffer with an ongoing substantial great deal of pain and severe emotional distress, anxiety, sadness, shame, acute depression, and acute hopelessness at being a female trapped in the wrong body with the wrong genitalia since she was a young child of three years of age.

27) It is not a question of if, but when will the plaintiff attempt to perform a self-penectomy, a self-castration, or attempt suicide, without the cure for her severe gender dysphoria. It is no mystery that plaintiff will harm herself, without the cure for her severe gender dysphoria.

28) It is a matter of life and death that the plaintiff be immediately provided with the cure to protect her from the threat of imminent danger of serious physical injury of self-harm.

29) The "real-life" prison experience of living and being a female for the plaintiff, coupled with surgical therapy, of which WV medicaid will pay for, will make it much easier for plaintiff to be and live as a whole female.

30) The cost for the cure, a gender reassignment surgery for the plaintiff, costs less, compared to the treatments provided to some inmates with cancer, kidney failure and heart transplants, and prison officials must ensure that all inmates receive adequate medical care, regardless of how much the treatments costs.

31) Adequate medical care must be provided to the plaintiff to ensure that her health and safety is properly maintained.

32) Prison officials are depriving the plaintiff of her right to adequate medical care and to reasonable safety, by being deliberately indifferent to her serious medical need of transexualism, by refusing to provide the plaintiff with access to the cure for her severe gender dysphoria.

33) In the instant case, the defendant, Ms. Jividen is fully aware of the fact that the plaintiff, Ms. Sunshine is having a real-life experience living and appearing as a female incarcerated in a male institution, by:
1. Wearing modest makeup
2. Wearing female undergarments
3. Wearing pigtails
4. Shaving her body parts
5. Taking female hormones
6. Using the toilet as a female
7. Being addressed as a female, by inmates
8. Being addressed by her first name of Brianna by inmates
9. Being spoken to and referred to as a female by inmates
10. Being treated and respected as a female by inmates
11. Wearing a t-shirt like a skirt or dress
12. Talking with a feminine voice

34) Despite the defendant, Ms. Jividen being fully aware of the above facts, she continues to deny the plaintiff, Ms. Sunshine of her right to receive her sex reassignment surgery so she can stop pretending to be someone who she is not, and to be her authentic self of a female. The plaintiff, Ms. Sunshine is tired of being someone who she is not. She is a female, not a male. Ms. Sunshine is living a lie of pretending to be a male

14

35) In <u>Farmer v. Brennan, 511 U.S. 825 (1994)</u>, the U.S. Supreme Court held that prison officials may be held liable under the Eighth Amendment when they know a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to address it.

36) In <u>Maggert v. Hanks, 131 F.3d 670 (7th Cir. 1998)</u>, the court acknowledged that a transgender woman had the right to be protected.

37) The plaintiff, Ms. Sunshine, has an Eighth Amendment Right not to have prison officials be deliberately indifferent to her serious medical need of transexualism.

38) There is no legitimate penological purpose in refusing to allow Ms. Sunshine to have her sex reassignment surgery.

39) It is in the best interest of the plaintiff, Ms. Sunshine that her sex reassignment surgery be performed immediately.

40) No injury will be done to any person by reason of the sex change of the plaintiff, Ms. Sunshine.

41) The plaintiff, Ms. Sunshine's gender dysphoria is a serious life threatening medical condition.

42. The defendant can't provide to this court a sigle rational reason for prohibiting the plaintiff, Ms. Sunshine, from having her sex reassignment surgery.

43. Banning the plaintiff, Ms. Sunshine, from allowing her to have and undergo a sex reassignment surgery, bears no rational relationship to any of the legitimate governmental interests that the defendant may proffer to the court.

44. The defendant would rather save money than pay for the sex reassignment surgery that is medically necessary to protect the plaintiff, Ms. Sunshine, from an imminent risk of serious self-harm.

45. The plaintiff, Ms. Sunshine, has a life threatening medical condition that can only be cured by the plaintiff, having her sex reassignment surgery, and the defendant will not allow Ms. Sunshine to have the surgery that will protect the plaintiff, because, the defendant claims:

   1. The sex reassignment surgery is too costly,

   2. The plaintiff is not having a real life experience, and

   3. The sex reassignment surgery is not medically necessary.

(46) <u>The cure</u> for the plaintiff's severe gender dysphoria consists not of psychiatric treatment designed to make the plaintiff content with her biological sexual identity - <u>THAT DOESN'T WORK</u> - but of estrogen therapy designed to create the secondary sexual characteristics of a woman, followed by surgical removal of the male genitals and the construction of a vagina-substitute out of the penile tissue.

47) Sex reassignment surgery, along with female estrogen hormone therapy, and real-life experience is a treatment that has proven to be **100** percent effective to "<u>CURE</u>" a gender identity disorder. Sex reassignment surgery is not "experimental," "elective," "investigational," "cosmetic," or "optional" in any meaningful sense. <u>It is a very effective and appropriate</u> medical treatment to cure transexualism.

48. The defendant is not qualified to make medical judgments.

49. Without the sex reassignment surgery, <u>it is very likely</u> that petitioner will harm herself, and that threat must be taken serious by the defendant, and the defendant can't convince the court that the plaintiff is safe and adequately protected from the substantial risk of imminent serious self harm by not allowing Ms. Sunshine to undergo a sex reassignment surgery.

## V. RELIEF SOUGHT:

WHEREFORE, plaintiff, Ms. Sunshine, respectfully prays that the court enter judgment granting plaintiff:

1. An order, compelling the defendant to protect the plaintiff, Ms. Sunshine from the substantial risk of imminent serious self-harm, that she is now facing, by providing her with all of the adequate medical treatments that are necessary to cure the plaintiff, Ms. Sunshine's severe gender dysphoria, and

2. A declaration that the acts and omissions described herein, violate Ms. Sunshine's rights under the Constitution and laws of the State of West Virginia, and of the United States, and

3. An order, enjoining the defendants, their employees, agents and successors in office from providing medical care and treatment to the plaintiff, Ms. Sunshine that is inconsistent with the standards of medical care and treatment for transexualism in the State of West Virginia, as a whole, and

4. A jury trial on all issues triable by jury, and

5. Plaintiff's costs in this suit, and

18

## V. Relief Continued:

6. An Order, enjoining the defendants, their employees, agents and successors in office from refusing to provide and delaying provisions of necessary medical treatments to cure the severe gender dysphoria of the plaintiff, Ms. Sunshine, and

7. And any additional relief this court deems just, proper, and equitable.

DATED: April 14, 2021

Respectfully Submitted

*Brianna Ann Sunshine*
Brianna Ann Sunshine
a.k.a. William Allen LaRue
OID# 3351255 - MOCCJ
1 Mountainside Way
Mount Olive, WV 25185-1000

## VERIFICATION

I, Brianna Ann Sunshine, declare under penalty of perjury, that the foregoing is true and correct.

Executed on April 14, 2021

*Brianna Ann Sunshine*
Brianna Ann Sunshine, plaintiff

19